UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF JOSE ANGEL FELIPE NIEVES, Deceased, by ANGELICA NIEVES, Independent Administrator, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 17-cv-00088<br>)<br>) Honorable Matthew Kennelly |
| CITY OF CHICAGO, City of Chicago Police Officer LOWELL HOUSER, | ) Magistrate Judge Sheila Finnegan<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT CITY OF CHICAGO TO ANSWER DISCOVERY AND PRODUCE DOCUMENTS**

Plaintiff Angelica Nieves, as Independent Administrator of the Estate of Jose Angel Felipe Nieves, by and through attorneys, Action Injury Law Group, LLC, and Hart McLaughlin & Eldridge, LLC, for the Motion to Compel Defendant City of Chicago to Answer Discovery and Produce Documents, states as follows:

**INTRODUCTION**

Over two years ago, on January 2, 2017 at approximately 9:15 a.m., Defendant Lowell Houser, employed by Defendant City of Chicago ("the City") as a police officer, shot and killed Decedent Jose Angel Felipe Nieves, who was unarmed and presented no threat to Houser or anyone else. (Dkt. 55, ¶¶1-2, 9-12). Defendant Houser is charged with first-degree murder. On January 6, 2017, Plaintiff filed this lawsuit alleging, in part, a Section 1983 claim for unconstitutional seizure and *Monell* claims based upon a pattern of unconstitutional policies and practices which, among other things, resulted in the retention of Houser on the police force after the City knew or had reason to know that Houser had become a danger to himself and to members of the public he was

1

sworn to serve and protect.

On January 29, 2019, after a two year stay of primarily Houser-related fact discovery because of the parallel first degree murder proceeding, this Court ordered that the "City is to respond to request for medical/mental health records by 02/19/19." (Dkt. 65.) On the last day of the deadline, the City vaguely identified – without a privilege log – over 1,500 pages of responsive records that it would not produce. (Ex A, February 19, 2019 Letter.)[1] The City has cloaked these records under four nebulous labels: (i) "Personal Concerns Program Documents" (hereinafter, "PCP Documents"); (ii) "Personnel Files"; (iii) "Fitness for Duty Evaluations" (hereinafter, "FFD Files"); and (iv) "Medical Files." (Ex. B, pp. 1-2.)

Tellingly, the City does not dispute that the records are responsive and relevant. Instead, in refusing to produce the records, the City offers a series of baseless and misguided objections under the guise of having "proceeded out of an abundance of caution." (Ex. B, p. 3.) In doing so, the City frustrates discovery and selectively blinds itself to the federal question jurisdiction of this court, this Court's prior orders (including, but not limited to, the Agreed Protective Order (Dkt. 30)), the wealth of caselaw mandating the production of these precise records, the City's explicit discovery obligations pursuant to the Federal Rules of Civil Procedure, and the undisputed facts of this case. Instead, the City supports its obfuscation via inapplicable Illinois statutory privileges, a strained interpretation of privacy and the speculation of a "*potential* psychotherapist-patient privilege" (Ex. B, p. 2 (emphasis added).) None of the City's excuses apply. This Court should compel the production of the unduly withheld records immediately.

**MEET AND CONFER CERTIFICATION**

On February 26, 2019, pursuant to Local Rule 37.2, counsel for Plaintiff and counsel for

---

[1] Following a conference pursuant to Local Rule 37.2, Defendant echoed its positions in the February 27, 2019 letter attached here as Exhibit B.

the City of Chicago conducted a lengthy telephonic meet-and-confer in a good-faith effort to resolve discovery disputes. Despite these efforts, the parties were unable to reach an accord.

## ARGUMENT

**I.     The City Should Produce the "PCP Documents" and "Personnel Files" Immediately**

The City does not claim privilege with respect to the PCP Documents and Personnel Files, but instead, offers unfounded objections misinterpreting, if not exaggerating, the scope and consequences of two orders from nearly two years ago: (A) the May 11, 2017 stay order by this Court (Dkt. 23); and (B) the March 1, 2017 criminal court order – attached hereto as Exhibit C – prohibiting the release of records under the Transparency Policy of Freedom of Information Act. Neither of these orders presently justify the City's refusal to produce the PCP Document and Personnel Files to Plaintiff in this civil matter.

**A. The City's refusal to produce records based upon the purported stay of discovery is unfounded.**

On January 29, 2019, this Court ordered that the "City is to respond to request for medical/mental health records by 02/19/2019." (Dkt. 65.) The City has elected to overlook the Court's clear directive from weeks earlier, relying instead on a strained and self-serving interpretation of an order entered by this Court nearly two years prior. (*Compare* Dkt. 65 *with* Dkt. 23.) However, back in May of 2017, the procedural posture of the case was starkly different given that Defendant Houser had shot and killed Mr. Nieves only months earlier. At that time, this Court noted that the criminal case "is at a fairly early stage" and the "shooting happened not all that long ago in the scheme of things." (Dkt. 26, Tr. 4:14-15, 5:9-10.) Importantly, however, this Court cautioned the parties:

> And then the one other thing I will say – and this circles back to a point I said earlier – this doesn't necessarily mean forever, it doesn't necessarily mean that irrespective of how long the criminal case takes to get to resolution that the case – this case is going to be stayed pending that. We have all been involved in cases, both civil and criminal, that sometimes get delayed in an inordinate way. If that ends up happening

3

> in the civil [sic] case, it might become true at some point that the interest that the plaintiff in this case has in proceeding expeditiously and not losing access to evidence might carry the day if the criminal case languishes, for want of a better word. So that's where we are.

(*Id.* at Tr. 6:20-7:7.) As contemplated, the criminal case has seemingly languished and more than two years after the death of Mr. Nieves at the hands of Defendant Houser, this Court revisited the status of discovery and ordered the City to respond to the Plaintiff's requests for records. The City's reliance upon the May 11, 2017 order is misplaced and unjustified in view of the Court's most recent January 29, 2019 order and renders the City and Plaintiff's renewed discovery efforts an exercise in futility.

    **B. The City's refusal to produce records based upon the criminal order prohibiting release of records under the Transparency Policy of Freedom of Information Act is unfounded.**

    Not to be deterred, the City also relies on a misguided interpretation of a separate order entered nearly two years ago – a criminal court order – to justify its refusal to produce responsive records. On March 1, 2017, the criminal court ordered that "the City of Chicago and its entities shall not release any material related to the above-captioned case under the Transparency Policy of Freedom of Information Act…" (Ex. C.) The City fails to appreciate that this Order does not bar the production of records in this civil matter.

    Courts have routinely rejected the type of objection the City seems to proffer. For example, in *People ex rel. Birkett v. City of Chicago*, the Court criticized the City's "assumption that information exempt from disclosure to the general public under either the federal [Freedom of Information] Act or state Act is privileged and thus not discoverable by a civil litigant" and found that the "argument stands the law on its head. It transforms the exemption of the [Freedom of Information] Act into a testimonial privilege." 292 Ill.App.3d 745, 751 (2d Dist. 1997) *aff'd* 184 Ill.2d 521 (1998) (internal citations omitted) ("While confidentiality of information may be sufficient ground for non-disclosure under the Act, under the Rules [of Civil Procedure] there is

no general principle that makes information otherwise discoverable privileged because it was given in confidence"). Indeed, as held in *Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997), "FOIA exemptions are not dispositive of a discovery request. The FOIA does not create an evidentiary privilege because the statute concerns disclosure to the public generally, not disclosure to a specific litigant in response to discovery in litigation." Moreover, as discussed in further detail below in Section IIA, this Court has entered an Agreed Protective Order in this case (Dkt. 30), which protects against the disclosure of confidential information to third-parties, including, for example, the news media. Accordingly, the restriction on providing records under the Transparency Policy of Freedom of Information Act need not and should not be conflated with the obligations placed upon a litigant in this Court.

In sum, neither this Court's May 11, 2017 order nor the criminal court's March 1, 2017 order prevents the City from complying with the Federal Rules of Civil Procedure and this Court's January 29, 2019 order to produce the responsive records. The City's position is incongruous with the purpose and effects of the controlling orders.

**II.     The City Should Produce the "FFD Files" and "Medical Files" Immediately**

The City extends the same above objections to producing the FFD Files and Medical Files, but also lodges an additional avalanche of various and equally inapplicable "privilege" objections. These objections are without merit and Plaintiff must produce the FFD Files and Medical Files immediately.

**A. The City's refusal to produce records based upon HIPAA is unfounded.**

The City refuses to produce 912 pages of "medical files"[2] in its possession pursuant to a purported Health Insurance Portability and Accountability Act ("HIPAA") objection. (Ex. A, p. 2;

---

[2] The City's failure to provide a privilege log and any details aside from the vague label of "medical records" is a clear violation of the Federal Rules of Civil Procedure in its own right, and is specifically addressed in Section III of this Motion.

5

Ex. B, p. 2.) The City, however, ignores the protections afforded by the Agreed Protective Order previously entered in this case. (*See* Dkts. 27-30.) The Agreed Protective Order covers "all materials produced or adduced in the course of discovery" and defines "Confidential Information" to include items such as any "information prohibited from disclosure by statute," "medical information concerning any individual," "personal identity information," "personnel or employment records of any individual," and "all reports and documents from the Chicago Police Department and Independent Police Review Authority investigations." (Dkt. 30 at ¶¶1, 2(a)(1),(4),(5),(7),(8).) Moreover, the Agreed Protective Order bars the use or disclosure of the information "for any purpose whatsoever other than in this litigation" and specifically delineates the limited third-party disclosures. (*Id.* at ¶5.) Last, the Protective Order mandates the return and/or destruction of records at the conclusion of the litigation. (*Id.* at ¶14.) Clearly, certain "[d]ocuments contain confidential information that should be produced only for use in this case and not more widely disseminated. That is the purpose of a confidentiality order." *Gomes v. Lake County, Ill.*, No. 12 C 4439, 2013 WL 2156042, at *3 (N.D. Ill. May 15, 2013).

To the extent that the City contends HIPAA requires the written authorization of Defendant Houser, that is simply untrue. Indeed, 45 C.F.R. §164.512(e) details "permitted disclosures." *See also Klaine v. S. Illinois Hosp. Servs.*, 2014 IL App (5th) 130356, ¶29 (finding unredacted document can be disclosed without authorization; criticizing objecting defense counsel for failure to cite regulation to Court). Given that Defendant Houser is well aware of Plaintiff's requests and the City has satisfactory assurances contained within the Agreed Protective Order, there should be no pause for concern. C.F.R. §§164.512(e)(1)(ii)-(v).

Notwithstanding, even if the Agreed Protective Order did not suffice – it does – then the solution is not a steadfast refusal to produce records but rather a modification or entry of an additional protective order. At this juncture, however, it is unclear what the City believes the

Agreed Protective Order lacks. *See Illinois League of Advocates for the Developmentally, Disabled v. Illinois Dep't of Humans Servs.*, No. 13 C 1300, 2013 WL 3287145, at *4 (N.D. Ill. June 28, 2013) ("Defendants stress the private nature of the information contained in the medical records, but offer no convincing reason why the confidentiality is insufficient to protect the information in unredacted form").[3] Indeed, the City is surely familiar with seeking and obtaining an all-encompassing protective order. *See, e.g., Rangel v. City of Chicago*, No. 10 C 2750, 2010 WL 3699991, at *1 (N.D. Ill. Sept. 13, 2010) (City's request for entry of protective order to protect complaint register entries, personnel records and medical records).

**B. The City's refusal to produce records based upon the "Physician-Patient" Privilege is unfounded.**

The City also fails to appreciate this Court's original jurisdiction and the effect it has on privilege claims. The City admits that the jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(a). (Dkt. 57, ¶3). Notably, "[f]ederal common law governs the applicability of privilege in cases based upon a federal cause of action when the complaint also alleges a pendent state law claim." *Gomes*, 2013 WL 2156042, at *1. "[B]ecause this case presents, among other things, a Section 1983 claim based on federal law, the question of privilege is governed by federal common law." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1019 n.2 (N.D. Ill. 2000); *see also Scott v. Lewis*, 139 F.R.D. 353, 356 (N.D. Ill. 1991) ("because this is a federal question case – brought under 42 U.S.C. § 1983 – the common law as applied by the federal court will determine the validity of the privilege" and "[t]he Illinois statutory provisions, consequently, are of no moment to this determination"); *In re Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983) ("state-created principles of privilege do not control").

The City should not and cannot rely upon a "physician-patient" privilege as it does not

---

[3] If necessary, Plaintiff has no objection to the entry of an additional order that mirrors the "Example of a HIPAA Protective Order" included on the Northern District of Illinois website: https://www.ilnd.uscourts.gov/PrintContent.aspx?cmpid=734. The example is attached as Exhibit D.

7

exist in this Court. As clearly held in *Gomes*, "[f]ederal common law does not recognize a privilege between patients" and "because there is no doctor-patient privilege to protect the third-party inmates' medical information, there is no impediment to production of the inmates' medical records in this case." 2013 WL 2150642, at *1. Simply put:

> [F]ederal common law does not recognize a doctor-patient privilege, and individual's medical records are not protected from disclosure . . . Therefore, while a party or non-party may wish to keep this information confidential and private, it is not privileged information."

*Id.* at *2. In sum, there is no physician-patient privilege. *See, e.g., Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977) ("The physician-patient evidentiary privilege is unknown to the common law"); *United States v. Bek*, 493 F.3d 790, 802 (7th Cir. 2007) ("[W]e can find no circuit authority in support of a physician-patient privilege, even after *Jaffee*"); *Nat'l Abortion Fed'n v. Ashcroft*, No. 04 C 55, 2004 WL 292079, at *4 n.2 (N.D. Ill. Feb. 6, 2004) ("Neither the Supreme Court nor the Seventh Circuit has recognized a federal physician-patient privilege"); *Ligas*, 2007 WL 2136940, at *7 ("physician-patient privilege is a creature of Illinois law, it does not have applicability in this case, which is a federal question case").

**C. The City's refusal to produce records based upon the Illinois Mental Health and Developmental Disabilities Confidentiality Act is unfounded.**

Much like the physician-patient privilege pursuant to 735 ILCS 5/8-802, the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("IMHDDCA") pursuant to 740 ILCS 110/1 has no place in federal common law. As held in *Gomes*,

> The Court recognizes that the Illinois Mental Health and Development Disabilities Confidentiality Act, 740 ILCS 110/1, *et seq.*, protects both the confidentiality of patient communications with a mental health professional and any records relating to those communications. But the scope of the psychotherapist-patient privilege recognized by the United States Supreme Court in *Jaffee* is narrower, and ***Illinois law does not prescribe the scope of the federal common law privilege applicable in federal question cases.***

2013 WL 2150652, at *2, n.1 (emphasis added). Indeed, this Court has previously found:

8

> The parties erroneously address this issue under the Illinois Medical Health and Developmental Disabilities and Confidentiality Act, 740 ILCS 110/1, *et seq.* The Illinois Act does not apply here. Because this is a non-diversity Title VII case, the federal common law applies.

*Kiermeier v. Woodfield Nissan, Inc.*, No. 98 C 3260, 1999 WL 759485, at *1 (N.D. Ill. Sept. 7, 1999). Said another way, "[b]ecause the instant case is a federal question case, and not one of diversity, the federal common law of privilege applies" and "[c]onsequently, [party's] reliance on the Illinois Mental Health and Developmental Disabilities Confidentiality Act is to no avail." *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.*, 967 F. Supp. 346, 349 (C.D. Ill. 1997); *see also Awalt v. Marketti*, 287 F.R.D. 409, 414 n. 3 (N.D. Ill. 2012) ("resolution of the privilege issues are governed by the federal common law of privileges and not by the Illinois psychotherapist-patient privilege which is codified in the [IMHDDCA]").

**D. The City's refusal to produce records based upon the "Potential" Pyschotherapist-Patient Privilege is unfounded.**

The City resorts to an improper and exaggerated interpretation of the "potential" psychotherapist patient privilege as set forth in *Jaffee v. Redmond*, 518 U.S. 1 (1996), while failing to recognize the nuance of that matter and the materially distinguishable facts of this case.

***First,*** the City must produce the FFD Files because they do not arise out of a psychotherapist-patient relationship but rather from an employment evaluation to ensure Defendant Houser's fitness for duty. "The authority to order fitness exams is justified by the unique, almost paramilitary nature of the police departments and the critical importance of police officers to public health and safety." *Sangirardi v. Vill. of Stickney*, 342 Ill.App.3d 1, 14 (1st Dist. 2003). As held in *Barmore v. City of Rockford*,

> [T]he court finds the fitness evaluation to be categorically different from a psychological evaluation for purposes of medical diagnosis and treatment. In the latter, an officer is a patient desiring to get well. In the former, he is an employee hoping to keep his job. Clearly, the information obtained from each respective evaluation will be different and will be used for different purposes.
> \*   \*   \*   \*   \*

9

> [T]he court finds that the fitness evaluations in this case are different from psychological evaluations for the purpose of diagnosis and treatment as contemplated by the Supreme Court when it recognized the psychotherapist-patient privilege. To extend the privilege to this type of situation would be to run afoul of the well-established rule that the public is entitled to 'every man's evidence' and that departures from that general rule disfavoring testimonial privileges must be 'distinctly exceptional.'

No. 09 C 50236, 2012 WL 1660651, at *3-4 (N.D. Ill. May 11, 2012). This was not a therapeutic relationship, but rather an evaluation and assessment of Defendant Houser to ensure fitness for employment. *See, e.g., Goral v. Illinois State Bd. of Educ.*, 2013 IL App (1st) 130752, ¶24 (finding no privilege because the psychotherapist was "retained, not by [employee], but by [employer] specifically for the purpose of evaluating [employee's] mental health as it related to his fitness for continued employment"); *Smith v. City of Plano*, No. 01 C 7111, 2002 WL 1483902, at *2 (N.D. Ill. July 9, 2002) (officer "knew that he was being sent to the examiner to determine if he was fit to continue working as a police officer and that he should expect no privacy in the information he related to [the doctor]. This alters . . . [the] relationship with the doctor"); *Scott*, 101 F. Supp. 2d at 1020 ("expectation of confidentiality absent in case" where interviews and results would be shared with the police chief). In *Jaffee*, the police officer voluntarily sought evaluation and treatment; that is not the case here, where the City has admitted that the FFD records relate to instances "when Mr. Houser was referred for a fitness for duty assessment." (Ex. B, p. 2). Indeed, "as a police officer, [he] has no reasonable expectation that the results of his fitness exam would be kept confidential from [his employer] because fitness exams are part and parcel of the process officers must undergo in order to be hired and retained." *Sangirardi*, 342 Ill.App.3d at 16.

**Second**, the City must produce the Medical Files, because Defendant Houser either did not make these communications with the expectation of confidentiality and/or subsequently waived any type of privileged information by providing them to the City. "Communications that are not made with the expectation of confidentiality are not privileged." *Ligas v. Maram*, No. 05 C 4331,

10

2007 WL 4225459, at *6 (N.D. Ill. Nov. 27, 2007). Furthermore, "[a] person who discloses privileged information to a third-party waives the privilege in the absence of an agreement to keep the information confidential." *Awalt*, 287 F.R.D. at 420 (N.D. Ill. 2012); *see also Flowers v. Owens*, 274 F.R.D. 218, 223 (N.D. Ill. 2011) (the psychotherapist-patient privilege "may be waived"); *Scott*, 101 F. Supp. 2d at 1020 ("disclosures to third parties waived any privilege" and "the documents are not privileged from production").

And even if there is an intact psychotherapist-patient privilege, then as held in *Gomes*, the Court "narrowly construes the psychotherapist-patient privilege to apply only to *communications* between a therapist and her patient . . . " 2013 WL 2150642, at *2 (emphasis in original); *see also Ligas*, 2007 WL 4225459, at *6 (psychotherapist-patient privilege "applies only to confidential communications"). Importantly, "the privilege should not apply to documents that identify the person receiving mental health treatment, the person providing treatment, and the reason the person is receiving treatment as reflected in medical records other than in the therapist's notes." *Gomes*, 2013 WL 2150642, at *2 (also calling for disclosure of type of medication prescribed to a patient undergoing mental health treatment); *see also Santelli v. Electro-Motive*, 188 F.R.D. 306, 310 (N.D. Ill. 1999) (the psychotherapist-patient privilege "does not prevent disclosure of the dates of [patient's] treatment or to the identity of [patient's] psychotherapists"), *Kiermeier,* 1999 WL 759485, at *1 (same); *Hucko v. City of Oak Forest*, 185 F.R.D. 526, 531 (N.D. Ill. 1999) ("the fact of plaintiff's consultations with psychotherapists either before or after his arrest, and the dates of those consultations is not privileged"). As aptly noted by the court in *Gomes*, "there is a difference between confidential and/or private information and privileged information." 2013 WL 2150642, at *2. The court's reasoning in *Scott v. Edinburg*, explains the discoverability of this type of information:

> The psychological evaluation itself contains information revealed by Mr. Edinburg concerning his military and employment history prior to joining the

11

> Village of Glenwood police force, and other background information that reasonably may lead to admissible evidence. In addition, the report also relates information (obtained from records, Mr. Edinburg, and other employees of the police department) concerning Mr. Edinburg's performance during his training program with the Glenwood Police Department, including events that occurred within a few months of the incident in question. The report contains information related by Mr. Edinburg concerning the circumstances surrounding the shooting itself, as well as references to statements by his superiors in the police department about that event. And, there are the results of the psychological testing itself, as well as the psychologist's evaluation of those results. All of this information may lead to the discovery of admissible evidence concerning what happened in connection with the shooting, and why.

101 F. Supp. 2d at 1021-22.

**E. The City's refusal to produce records based upon the "Right to Privacy" is unfounded**.

The City's reference to the "right of privacy under the Illinois Constitution, Article I § 6" is hollow. (Ex. B, p. 2). As a matter of background, the "right to privacy, [] was added to article I, section 6, in response to a concern that the government might use newly available technology to develop 'a general information bank' that would collect and monitor personal information." *People v. Caballes*, 221 Ill.2d 282, 318 (2006). In discussing the addition, "[t]he chairman offered the example of devices that could 'penetrate and can view what's going on' inside a person's home, revealing 'bedtime intimacies and private conversations,' as the kind of unreasonable invasion of privacy could be prohibited. *Id.* at 319. Here, however, Defendant Houser is a civil litigant and "[i]t is beyond dispute that civil litigants have a drastically reduced expectation of privacy." *Kaull v. Kaull*, 2014 IL App (2d) ¶51. Moreover, it is well settled that:

> Constitutional principles should be addressed only when a case cannot be resolved in any other way. Both the Illinois Supreme Court and the United States Supreme Court have made it clear that the rules of discovery contemplate disclosure of information that would otherwise be protected from disclosure.
> \* \* \* \* \*
> The requirements of relevance and reasonableness together with judicial oversight provided by the rules of discovery appear to more than satisfy any fourth amendment or Illinois privacy concerns.

*Id.* at ¶¶44-45. Defendant Houser did not have a reasonable expectation of privacy for the records that are tellingly in possession of the City. *See Doe v. Bd. of Trustees of Univ. of Illinois*, 429 F. Supp. 2d 930, 945 (N.D. Ill. 2006) (dismissing claim for violation of constitutional right to privacy given that individual "had to know that his information would be disclosed to others"). Furthermore, given the severity of the underlying incident and the importance of the issues in this case, any purported invasion of privacy is more than reasonable. *See People v. Cornelius*, 213 Ill.2d 178, 193 (2004) ("it is well settled that the right to privacy is not absolute. Only *unreasonable* invasions of privacy are constitutionally forbidden") (emphasis in original).

    **F. The City's refusal to produce records based upon the question of whether Defendant Houser put his mental health at issue is unfounded.**

Even if this Court applies Illinois statutory privileges, *then* adopts the City's overbroad definition of the psychotherapist-patient privilege, *and then* rejects the fact that Defendant Houser did not have reasonable expectation that the communications were privileged and/or not waived despite being shared with his employer, the City would *still* need to produce the records because Defendant Houser's mental health is squarely at issue in this case. Take for example, *Munive v. Town of Cicero*, No. 12 C 5481, 2016 WL 8673072, at *3 (N.D. Ill. Oct. 14, 2016), *report and recommendation adopted sub nom, Colon v. Town of Cicero*, No. 12 C 581, 2017 WL 164377 (N.D. Ill. Jan. 17, 2017). In that case, a Cicero police officer, Don Garrity, shot and killed a single male adult, Cesar Munive. The Court granted the Munive's estate's motion to compel records that "may shed light on Garrity's mental state at the time of his hiring and the shooting" including: "(1) mental health records that pre-dated Cicero's hiring of Garrity; (2) mental health records from the period after Cicero hired Garrity; and (3) records related to Garrity's requests for non-active and disability status." *Id.*

13

**III.     The City's refusal to produce a privilege log violates the Federal Rules of Civil Procedure.**

Even if the Court found a privilege, the City's inexplicable refusal to provide a privilege log violates the Federal Rules of Civil Procedure. As already detailed above in Section IID, even assuming a psychotherapist-patient privilege applies, then the only records potentially barred from disclosure are communications. Even then, however, this privilege does not extinguish the City's obligation to provide a privilege log.

Rule 26(b)(A)(5) mandates that when a party "withholds information otherwise discoverable by claiming that the information is privileged," then the party must expressly make the claim and describe the communications to enable other parties to assess the claim. The City cannot have it both ways. Either the communications are not privileged by virtue of the City's possession of the records *or* the records are privileged, thereby requiring the City to comply with Rule 26(b)(A)(5). Forcing Plaintiff to blindly trust the City's conclusory privilege assertions is prejudicial, impractical and contrary to the rules of discovery. *See, e.g., Sommerfield v. City of Chicago*, 252 F.R.D. 407, 418 (N.D. Ill. 2018) (ordering City to produce a log because Rule 26(b)(5) "demands that a claim of privilege be supported by an appropriate log"); *Kramer v. Am. Bank & Tr. Co., N.A.*, No. 11 C 8785, 2015 WL 13735745, at *2 (N.D. Ill. Aug. 17, 2015) (the production of a privilege log "is a requirement of long standing" and the "insouciant attitude towards the privilege log requirement can have catastrophic repercussions"); *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010) ("failure to serve an adequate privilege log may result in a waiver of any protection from discovery"); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 86 (N.D. Ill. 1992) ("A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis"); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.* No. 17 C 1973, 2018 WL 1281393, at *2 (N.D. Ill. Jan. 10, 2018) ("Inadequate privilege logs are a significant and all-too-frequent problem in federal litigation").

## IV. The City's blanket "Investigation Continues" excuse is improper.

For nearly every single discovery response, the City has uniformly, and improperly, concluded with the statement: "investigation continues." Indeed, in its three-page February 19, 2019 letter, the City reiterates that its investigation continues three different times. (Ex. A, pp 1, 3). Plaintiff requests that this Court mandate that the City complete its "investigation" for records and affirm that it fully complied with discovery.[4] ***The shooting and killing of Decedent Nieves occurred 792 days ago***. The propriety of couching responses, or more fittingly non-responses, with "investigation continues" is no more. *See, e.g., Happel v. Wal-Mart Stores, Inc.*, No. 02 C 7771, 2006 WL 642562, at *11 (N.D. Ill. Mar. 8, 2006) (finding that "answer is inconclusive and non-responsive to the extent that it was submitted a number of years ago and mentions an ongoing investigation"); *Ford v. Exide Corp.*, No. 04 C 4293, 2005 WL 2008985, at *2 (N.D. Ill. Aug. 15, 2005) ("fact that Ford has not been forthright and diligent in his efforts to respond to Exide's discovery requests is will illustrated by the fact that Ford stated in its supplemental response that he is still 'currently gathering . . . information' despite the fact that he was provided with the discovery request over six months ago"); *Taylor v. Taylor*, No. 94 C 7483, 1996 WL 109752, at *5 (N.D. Ill. Mar. 8, 1996) ("disingenuous answers [are] 'investigation continues'").

WHEREFORE, for the above stated reasons, Plaintiff moves this Court for entry of an order compelling Defendant City of Chicago to produce the PCP Documents, Personnel Files, FFD Files, Medical Files, a privilege log in compliance with Federal Rule of Civil Procedure 26, and to affirm the completeness of the answers and production without the improper caveat of "investigation continues."

---

[4] Despite Plaintiff seeking documents and communications in the discovery and explicitly defining "document" to include writings by "electronic or electrical means" and "emails," the City has admitted that it never performed a search of ESI aside from having "searched for hard copies of documents and information in electronic databases." (Ex. B, p. 4).

Dated: March 5, 2019 　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/     John (Jack) B. Prior
　　　　　　　　　　　　　　　　　　　　　　One of the Attorneys for Plaintiff

Andrew M. Stroth
Carlton Odim
Amanda Yarusso
**ACTION INJURY LAW GROUP, LLC**
191 N. Wacker Dr., Suite 2300
Chicago, IL  60606
Tel: (312) 771-2444
astroth@actioninjurylawgroup.com
carlton@actioninjurylawgroup.com
amanda@actioninjurylawgroup.com

Steven A. Hart
Robert J. McLaughlin
Brian Eldridge
Carter Grant
John (Jack) B. Prior
**HART MCLAUGHLIN & ELDRIDGE, LLC**
22. W. Washington St., Suite 1600
Chicago, Illinois 60602
Tel: (312) 955-0545
shart@hmelegal.com
rmclaughlin@hmelegal.com
beldridge@hmelegal.com
cgrant@hmelegal.com
jprior@hmelegal.com