**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ESTATE OF JOSE ANGEL FELIPE | ) | |
| NIEVES, Deceased, by ANGELICA | ) | |
| NIEVES, Independent Administrator, | ) | |
| | ) | No. 17 CV 88 |
| Plaintiff, | ) | |
| | ) | Judge Matthew F. Kennelly |
| vs. | ) | |
| | ) | Magistrate Judge Sheila M. Finnegan |
| CITY OF CHICAGO, City of Chicago | ) | |
| Police Officer LOWELL HOUSER, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S MOTION TO STRUCTURE DISCOVERY

Defendant City of Chicago moves to structure discovery to prioritize the threshold issue of whether defendant Houser acted within the scope of his employment and to account for the impending decision in *First Midwest Bank v. City of Chicago,* No. 18-3049 (7th Cir.). The City is not seeking to bifurcate discovery. In support of this motion, the City states:

### INTRODUCTION

Defendant Lowell Houser has been convicted of the second-degree murder of decedent Jose Nieves. At the time he shot Nieves, Houser was off-duty and out of uniform, took no police actions before or after the shooting, used his personal weapon and ammunition, and had a history of personal conflict with Nieves. In other words, Houser acted outside the scope of his employment and not under color of law. *See generally Rivera v. City of Chicago*, 2005 WL 2739180 (N.D. Ill., Oct. 24, 2005) (Kennelly, J.).

The City brings this motion to avoid the unnecessary expenditure of substantial costs and resources in doing discovery on Plaintiff's extensive *Monell*[1] claims, as well as an unnecessary trial. If *First Midwest Bank* is decided in the City's favor and if Houser did not act within the scope of employment and under color of law, the City will not be subject to liability under *Monell* and the case could effectively be over. By contrast, even if Houser is found to have acted within the scope and under color of law, there still will be no need for Plaintiff's *Monell* claim because under that scenario, the City will be obligated to indemnify Houser for any compensatory damages awarded if he is found liable for killing Nieves without justification. Thus, the City seeks to prioritize discovery of the threshold issues of scope of employment and color of law, which would likely result in a motion for summary judgment as described below.

This is all the more important since Plaintiff's *Monell* claims are extraordinarily broad, raising allegations concerning the Chicago Police Department's (CPD) policies and practices regarding training, investigation and discipline, supervision, early intervention, and code of silence over a *thirty-year period* from Houser's hiring in 1988 through the present and implicating over *150 witnesses*. Plaintiff inexplicably failed to conduct virtually all of this *Monell* discovery during the preceding thirty-two months during which, pursuant to this Court's unambiguous order, she was supposed to be conducting *Monell* discovery. Over that period, the parties could have been working on discovery compromises, responses, and motions. Instead, Plaintiff only recently served these overly-burdensome requests, which promise to take years to answer. This near-three-year delay not only shows how little value Plaintiff put on this discovery, it confirms there is no downside to pausing this discovery pending the upcoming

---

[1] *Monell v. Dept. of Soc. Svcs. of the City of New York*, 436 U.S. 658 (1978).

decision in *First Midwest Bank* and adjudication of the scope issue here.

This Court has similarly structured discovery before, in *Medina v. City of Chicago*, 100 F.Supp.2d 893 (N.D. Ill. 2000). As we discuss below, the reasoning in *Medina* applies with even greater force to this case because an imminent Seventh Circuit decision could drastically affect the scope of this case. Supreme Court and Seventh Circuit case law further supports the concept of prioritizing threshold issues in discovery. And granting this motion will not prejudice Plaintiff because important non-*Monell* discovery – namely, discovery on the facts of the shooting at issue – will be prioritized. Structuring discovery in this case to focus first on scope/color of law issues, as well as damages (relevant in any event), will ensure that necessary discovery is efficiently completed while avoiding potentially wasteful spending on wide-ranging discovery that may be mooted once *First Midwest Bank,* and Houser's color of law and scope of employment questions, are resolved.

## ARGUMENT

### I. THE FACTS SUPPORT STRUCTURING DISCOVERY TO FOCUS FIRST ON COLOR OF LAW AND SCOPE OF EMPLOYMENT.

Houser shot Nieves on January 2, 2017, a day on which he was off-duty and in civilian clothes. He had just been activated for return to service after nine weeks on the medical roll and was scheduled to resume his on-duty shift responsibilities on January 3, 2017. Prior to the shooting, Houser and Nieves knew one another – Nieves lived in the same apartment building as Houser's girlfriend and her family, and Houser often stayed there as well. Further, there was a history of disputes and tensions between Nieves and Houser's girlfriend's family, and Plaintiff alleges Houser (again while off duty) had previously threatened Nieves with a gun.

On January 2, 2017, Houser was at the building visiting his girlfriend. As he was leaving, Houser and Nieves got into an argument outside the building over something Houser had said to Nieves's girlfriend. Prior to the shooting, Houser did not take any actions as a police officer – he was not trying to investigate, question, detain or arrest Nieves.[2] And contrary to Plaintiff's claim, Houser did not use a "Department issued" gun or ammunition to shoot Nieves; CPD officers' weapons and ammunition are their own. After the shooting, Houser also took no police actions – he did not secure the scene, search for a weapon, or check on Nieves's condition. In short, at all relevant times, Houser acted as a private person.

In 2017, Houser was charged with first-degree murder.[3] At his bench trial, Houser did not testify. On December 20, 2019, he was convicted of second-degree murder. The City's information is that Houser has post-trial motions pending, after which an appeal could be filed.

In this lawsuit, Plaintiff has alleged that Houser acted within the scope of his employment and under color of law. The City has denied those allegations and has denied Houser representation by City-appointed counsel. Houser, acting *pro se*, has so far invoked the Fifth Amendment in response to Plaintiff's allegations.

## II.     AFTER SERVING INITIAL REQUESTS IN 2017, PLAINTIFF CONDUCTED NO *MONELL* DISCOVERY FOR THE NEXT THIRTY-TWO MONTHS.

On January 6, 2017, Plaintiff filed suit, alleging *Monell* claims including a failure to train,

---

[2] Documents reflect that at most, Houser may have said "I'm a Chicago police officer," but such a statement by itself does not place Houser within the scope and under color of law. *Rivera*, 2005 WL 2739180 at *5 (finding off-duty officer outside scope of employment despite fact that he announced himself as a Chicago police officer, falsely claimed he had a warrant, detained and handcuffed plaintiff, and searched her home). Beyond that, he never even purported to take police action or effect an arrest.

[3] Houser was not charged with official misconduct under 720 ILCS 5/33-3, which applies when a "public officer" commits an unlawful act "in his official capacity."

monitor, supervise, control, investigate and discipline officers; a code of silence; encouraging excessive force; and the deliberate indifference of municipal policymakers. Dkt. 1. at ¶¶ 31-50. On May 11, 2017, this Court stayed discovery on damages and the circumstances surrounding Nieves's death, but allowed "written discovery regarding [the] *Monell* claim" to proceed. Dkt.23. Nothing in this Court's stay order suggested Plaintiff did not have to conduct *Monell* discovery diligently and efficiently in the period during which the limited stay applied to non-*Monell* discovery. To the contrary, she was *supposed* to be conducting discovery on *Monell* issues.

Beginning in May 2017, Plaintiff issued ten interrogatories, thirty-two requests to admit, and thirty-three requests for production to the City. By November 2017, the City had answered the discovery and produced over 6000 pages of documents. In April and May of 2018, the City produced 577 additional pages of documents, including IPRA's referrals of deadly force incidents to the Cook County State's Attorney's Office. In February 2019, the City disclosed 937 more pages of documents related to Houser's personnel history, as well as responsive departmental written directives. *Written discovery to the City concerning Houser's CPD career is essentially complete.*

Other than serving her this *Monell* discovery in May 2017, Plaintiff did nothing meaningful to pursue her *Monell* claims for the next 2-1/2 years.[4] But on January 28, 2020, three weeks after this Court lifted its stay of non-*Monell* discovery (Dkt. 92), Plaintiff served what she called a "second supplemental set" of discovery (sixty-five document requests and seventeen interrogatories), nearly all of which were *Monell*-related inquiries that could and should have

---

[4] On April 23, 2019, this Court denied Plaintiff's motion to compel specific records relating to Houser's personnel file and his medical and mental health. Dkt.72, 86. After the stay was lifted and protective orders were entered, the City produced 2600 additional pages of these documents.

been served during the previous thirty-two months.

This all-new discovery is objectionable on numerous grounds. On the issue of undue burden alone, it is difficult to overstate its staggering nature. Encompassing a time frame of more than thirty years, she has requested, among other things, production of complaints – such as for any CPD officer's conduct resulting in the loss of the right to carry a firearm or badge – that could amount to reviewing thousands of complaint register files, each one of which would be time-consuming and costly to identify, locate and prepare for production; documents related to the entire span of CPD's investigative and disciplinary processes; and lists of all City lawsuits related to any CPD officer's "off-duty" behavior. In response to Plaintiff's "supplemental" discovery, the City so far has produced nearly 4,300 pages of documents, but its objections to producing others invariably will lead to discovery disputes and motion practice to resolve them. Plaintiff has offered no excuse for failing to pursue this discovery in 2017, 2018, and 2019. Numerous Rule 30(b)(6) depositions would then follow. Conducting this additional *Monell* discovery has been and will continue to be unduly burdensome and time-consuming, and most likely will extend discovery an extra year or more, as is typical in other lawsuits with *Monell* claims. It could also cost an increasingly cash-strapped City hundreds of thousands of dollars in unnecessary outside attorneys' fees, not to mention exposure to additional fees under Section 1988. All this work should be avoided if, as we believe to be the case, Houser's actions cannot be attributed to the City.

Furthermore, on April 14, 2020, Plaintiff served supplemental Rule 26(a) disclosures. While her initial 26(a) disclosures made in February 2017 identified only five witnesses, Plaintiff three years later has identified over **150 witnesses**. *See* Group Exhibit A. According to Plaintiff,

6

110 of these witnesses relate to her *Monell* claims: 32 relate to the lack of accountability and repercussions from the City, and 86 possess "unique and specific personal knowledge that cannot be obtained elsewhere or throughs [sic] other methods" about the inner workings of CPD including training, rules, programs and practices. *See id.* at 19-21. It is unclear how many such witnesses will need to be deposed, but it could easily be scores. In the City's experience, such massive discovery has often been calculated to force settlement by threatening exorbitant fees and costs rather than to adduce pertinent evidence.

In sum, Plaintiff failed to meaningfully conduct *Monell* discovery for almost three years when only *Monell* discovery was allowed. Then, only after this Court lifted the stay on non-*Monell* discovery, did Plaintiff re-start *Monell* discovery that might have been completed in the past thirty-two months but for Plaintiff's failure to pursue it during that time frame. That discovery will require the expenditure of significant resources and at least several hundred thousand (or more) City dollars. Given the threshold issue in this case – whether the City is liable for Houser's off-duty conduct – such discovery and its attendant costs may well be unnecessary in light of *First Midwest Bank*.

### III. *FIRST MIDWEST BANK* MAY OBVIATE OR SIGNIFICANTLY NARROW PLAINTIFF'S *MONELL* CLAIMS AND RELATED DISCOVERY.

Whether Houser acted within the scope of employment and under color of law when he shot Nieves is a case-defining issue. The City's motion to structure does not seek to bifurcate discovery. It seeks to *prioritize* discovery and early summary judgment on that case-defining issue, because its resolution could preclude the need for discovery and litigation on Plaintiff's *Monell* claims. This is particularly true in light of the pending decision in *First Midwest Bank*.

In *First Midwest Bank*, off-duty Chicago police officer Patrick Kelly shot his friend Mike LaPorta. It was undisputed that Kelly was a private actor who engaged in private misconduct, and only *Monell* claims against the City were tried to the jury, which found for the plaintiff. The key issues on appeal in *First Midwest Bank* are the continuing viability of *Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990), and the related question of whether the City can be liable under *Monell* for an off-duty police officer's act of private misconduct. The appeal was argued on December 10, 2019. *See* http://media.ca7.uscourts.gov/sound/2019/pnr.18-3049.18-3049_12_10_2019.mp3.

Though the Seventh Circuit panel's inquiries focused on whether *Gibson* remains viable and whether cities can be held liable under *Monell* in the absence of an underlying constitutional violation, the City cannot predict, and is not predicting, the outcome of *First Midwest Bank*. *See* Exhibit B, Transcript of Oral Argument. Regardless of the likelihood of a decision either way, and even without the benefit of the panel's comments, principles of litigation and judicial economy warrant a brief pause in *Monell* discovery – in deference to prioritizing discovery about the *facts of this* case – while we await and assess the upcoming decision, which may obviate all *Monell* discovery completely and could even end the case.

## IV.   STRUCTURING DISCOVERY WILL BE EFFICIENT IN THIS CASE.

The central issue regarding the City's potential liability in this case will be whether Houser acted within the scope of his employment and under color of law when he shot and killed Nieves. If Houser is found outside the scope and not under color of law, and if the City prevails in *First Midwest Bank*, the *Monell* claims (and discovery about them) should be eliminated. Conversely, if Houser is found liable and within the scope/under color of law, there is no need

for *Monell* discovery because the City will be required to indemnify Houser for compensatory damages.

Focusing discovery on scope and color of law issues will be efficient, cost-effective, and key to the City's anticipated summary judgment motion and any trial if that motion is not dispositive. There is a relatively small number of witnesses who are relevant to those issues: one eyewitness to the actual shooting (Houser), five or six witnesses to events occurring immediately before and after the shooting, and about a dozen witnesses to the past relationship between Houser and Nieves. Discovery on these matters (as well as on damages) must be done with or without a *Monell* claim, and will easily occupy the parties' time, ensuring this case moves forward pending the decision in *First Midwest Bank*. Discovery on these issues also will not take an inordinate amount of time, after which the City anticipates moving for summary judgment. By then, *First Midwest Bank* will likely have been decided and this Court can realistically assess the status of the case to determine the appropriate next steps.

## V.     CASE LAW SUPPORTS THE CITY'S PROPOSED STRUCTURING.

This Court has found that *Monell* discovery "can add significant time, effort, and complications to the discovery process." *Medina*, 100 F.Supp.2d at 895. In *Medina*, this Court denied a motion to bifurcate the *Monell* claims, and instead structured discovery:

> Even if the Court is not willing to bifurcate the trial at this point, that does not mean that discovery must proceed all at once. Federal Rule of Civil Procedure 26(c) permits a court to control the scope and sequence of discovery. In this case, the Court will defer discovery on the *Monell* claim until after the completion of fact discovery on the claims against the individual officers. At that time, the parties and the Court will be able to reassess the case, including the prospects for settlement, the particular municipal policy or custom claimed to be at issue, and the scope of discovery that the *Monell* claim would entail. If the case is not settled at that point, this reassessment will enable the Court to determine whether *Monell* discovery is necessary, and what its proper scope should be.

9

*Id.* at 898. While this Court has cautioned that its reasoning in *Medina* does not apply to every case, the approach taken in *Medina* is particularly suited to this case given the central issues of scope/color of law and the pendency of *First Midwest Bank*. As with the related concept of a "stay," a court may consider the following factors in deciding whether to "structure" or prioritize discovery: "whether a stay [structure] will unduly prejudice or tactically disadvantage the non-moving party," "whether a stay [structure] will simplify the issues in question and streamline the trial," and "whether a stay [structure] will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F.Supp.2d 1006, 1007 (N.D. Ill. 2009). *All* of these factors strongly support the discovery prioritization we propose here.

Further, the court may also consider the impact that an impending decision may have on the case. *See generally Landis v. North American Co.,* 299 U.S. 248 (1936). For instance, in *Abdallah v. FedEx Corp. Services, Inc.*, 2017 WL 3669040 (N.D. Ill., Mar. 20, 2017), the parties jointly requested and were granted a stay of the entire litigation while awaiting a forthcoming appellate decision that would provide guidance on key issues present in the case. The same factor is present here.

The City is not seeking bifurcation or stay of all discovery; rather, it only seeks to prioritize discovery by first focusing on scope/color of law and damages while deferring discovery on *Monell*. Such structuring will not unduly prejudice Plaintiff, who is now free to conduct discovery on *this case* (the shooting itself, scope, color of law, and damages). Further, in assessing any potential prejudice, the Court should take into account Plaintiff's inexplicable failure to conduct *Monell* discovery for thirty-two months even though that was the only discovery allowed during that period. Indeed, her new discovery – involving scores of document

10

requests, thirty-years in temporal scope, and over 150 witnesses – has all the attributes of a settlement hammer, not a true effort to discover competent and relevant information needed to prove Plaintiff's claims.

Conversely, structuring discovery would relieve the City of the substantial hardship, burden and expense of responding to and litigating Plaintiff's multiple and expansive *Monell* claims, at least until the need for or extent of such discovery is clarified by *First Midwest Bank*. Such structuring also would simplify the issues in question, streamline discovery and motion practice, and address the determinative scope and color of law issues first. *See Todd by Todd v. Merrell Dow Pharm., Inc.,* 942 F.2d 1173, 1178 (7th Cir. 1991) ("Limiting discovery to a threshold issue is proper in a case that may be resolved upon summary judgment"). And if discovery and summary judgment on *Monell* are later deemed necessary, that scenario could be accommodated. *See Gordon v. Veneman,* 61 Fed. Appx. 296, 298 (7th Cir. 2003) (allowing second summary judgment motion to avoid waste of judicial resources on claim that should not have reached trial). Granting the City's motion would serve the interests of the parties and the Court in securing a "just, speedy and inexpensive determination." Fed. R. Civ. P. 1.

## CONCLUSION

For the reasons stated above, the City asks this Court to structure discovery in the following manner: (1) allow prioritized two-way discovery on Plaintiff's allegations of scope of employment/color of law and damages, which includes the facts of the shooting at issue; (2) address the City's anticipated motion for summary judgment on scope/color of law at the close of the limited discovery; and (3) defer discovery and further litigation on Plaintiff's *Monell* claims until *First Midwest Bank* and the scope/color of law issues in this case have been decided.

Date: May 28, 2020                                    Respectfully Submitted,

                                                      MARK A. FLESSNER

                                                      Corporation Counsel of the City of Chicago

                                                      /s/ Jeffrey N. Given
                                                      JEFFREY N. GIVEN, Attorney No. 6289138
                                                      Special Assistant Corporation Counsel
                                                      *One of the Attorneys for Defendant City*

James G. Sotos
Jeffrey N. Given
Joseph M. Polick
David A. Brueggen
George J. Yamin, Jr.
Special Assistant Corporation Counsel
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., Ste. 1240A
Chicago, Illinois 60604
Tel: 630-735-3300
jgiven@jsotoslawc.com

## CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Thursday, May 28, 2020, I electronically filed the foregoing **Defendant City of Chicago's Motion to Structure Discovery** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants. A copy will also be mailed to Lowell Houser at the address listed below

**Attorneys for Plaintiff**
Andrew M. Stroth
Carlton Odim
Amanda Yarusso
**Action Injury Law Group, LLC**
191 North Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312)771-2444
astroth@actioninjurylawgroup.com
carlton@actioninjurylawgroup.com
amanda@actioninjurylawgroup.com

Steven A. Hart
Robert J. McLaughlin
Brian Eldridge
Carter Grant
John(Jack) B. Prior
**Hart McLaughlin & Eldridge, LLC**
22 W. Washington St., Suite 1600
Chicago, IL 60602
(312)955-0545
shart@hmelegal.com
mclaughlin@hmelegal.com
beldridge@hmelegal.com
cgrant@hmelegal.com
jprior@hmelegal.com

**Lowell Houser**
Lowell Houser Inmate #Y-41344
Robinson Correctional Center
13423 E. 1150th Ave
Robinson, IL 62454

/s/ Jeffrey N. Given
JEFFREY N. GIVEN, Attorney No. 6184989
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant City*

13